

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

March 21, 2018

Jeffrey Barnard, M.D.
Chair
Texas Forensic Science Commission
1700 North Congress Avenue, Suite 445
Austin, Texas 78701

Opinion No. KP-0188

Re: Whether postmortem toxicological analysis conducted pursuant to the request of a medical examiner or forensic pathologist is subject to accreditation requirements of the Forensic Science Commission (RQ-0183-KP)

Dear Dr. Barnard:

You ask about the accreditation authority of the Texas Forensic Science Commission (the "Commission") concerning postmortem toxicological analysis conducted pursuant to the request of a medical examiner or forensic pathologist.[1] The Commission administers forensic science accreditation and licensing programs under article 38.01 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 38.01, § 4-d. You state that "[t]oxicology is the science of identifying and understanding the adverse effects of external chemical and physical agents on biological systems." Request Letter at 2; see MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1323 (11th ed. 2004) (defining "toxicology" as "a science that deals with poisons and their effect and with the problems involved"). You explain that medical examiners and forensic pathologists typically request postmortem toxicology to determine an individual's cause and manner of death. Request Letter at 2–3. You ask generally "whether postmortem toxicological analysis . . . conducted pursuant to the request of a medical examiner or forensic pathologist is subject to Commission accreditation requirements." *Id.* at 1.

Article 38.01 creates the Commission and assigns its duties and authority. TEX. CODE CRIM. PROC. art. 38.01. The statute does not require accreditation of particular types of analysis or testing such as postmortem toxicology. Rather, article 38.01, section 4-a requires the Commission to license certain persons as forensic analysts. *Id.* art. 38.01, § 4-a. Also, section 4-d requires the Commission to accredit "crime laboratories and other entities conducting forensic analyses of physical evidence for use in criminal proceedings." *Id.* art. 38.01, § 4-d(b)(1). As you ask only about accreditation, we limit our review to the Commission's authority to accredit entities under article 38.01.

---

[1]*See* Letter from Jeffrey Barnard, M.D., Chair, Tex. Forensic Sci. Comm'n, to Honorable Ken Paxton, Tex. Att'y Gen. at 1, 3 (Sept. 22, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs ("Request Letter").

The Commission's accreditation authority under article 38.01 depends on the meaning of several key terms that article 38.01 defines by reference to article 38.35. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 478 (Tex. 2009) (holding that "[i]f a statute defines a term, a court is bound to construe that term by its statutory definition only" (internal quotation marks omitted)). As defined, a "'crime laboratory' includes a public or private laboratory or other entity that conducts a *forensic analysis subject to* [article 38.35]." TEX. CODE CRIM. PROC. art. 38.35(a)(1) (emphasis added); *see also id.* art. 38.01, § 2(3) (stating that the term "'[c]rime laboratory' has the meaning assigned by Article 38.35"). For accreditation purposes,

> "Forensic analysis" means a medical, chemical, toxicologic, ballistic, or other expert examination or test performed on physical evidence, including DNA evidence, *for the purpose of determining the connection of the evidence to a criminal action.* The term includes an examination or test requested by a law enforcement agency, prosecutor, criminal suspect or defendant, or court. The term does not include:
>
> . . .
>
> (F) an expert examination or test conducted principally for the purpose of scientific research, medical practice, civil or administrative litigation, or other *purpose unrelated to determining the connection of physical evidence to a criminal action.*

*Id.* art. 38.35(a)(4)(F) (emphases added); *see also id.* art. 38.01, § 4-d(a) (adopting the definition of "forensic analysis" from article 38.35).[2] Additionally, article 38.35 defines "physical evidence" as "any tangible object, thing, or substance relating to a criminal action," and "criminal action" as "includ[ing] an investigation, complaint, arrest, bail, bond, trial, appeal, punishment, or other matter related to conduct proscribed by a criminal offense." *Id.* art. 38.35(a)(2), (5).

You ask whether postmortem toxicology conducted pursuant to the request of a medical examiner or forensic pathologist falls within the "medical practice" exception from the definition of "forensic analysis" in article 38.35(a)(4)(F). Request Letter at 3. You ask further if the answer depends on whether the postmortem toxicology results are used for the purpose of determining the connection of evidence to a criminal action. *Id.* Neither article 38.01 nor article 38.35 addresses whether the laboratory of a medical examiner or forensic pathologist must be accredited. *See* TEX. CODE CRIM. PROC. arts. 38.01, .35. However, a laboratory of a medical examiner or forensic pathologist can be a "crime laboratory" subject to the Commission's accreditation requirements if it performs a "forensic analysis subject to" article 38.35. *Id.* art. 38.35(a)(1). Toxicologic examinations or testing performed on physical evidence are subject to article 38.35 if they are performed "for the purpose of determining the connection of the evidence to a criminal action."

---

[2]Article 38.01, section 2 also provides a definition of "forensic analysis." TEX. CODE CRIM. PROC. art. 38.01, § 2(4). However, sections 4-a and 4-d specifically adopt the definition located in article 38.35 for licensing and credentialing purposes. *Id.* art. 38.01, §§ 4-a(a)(1), 4-d(a).

*Id.* art. 38.35(a)(4). The exclusion for examinations or tests conducted principally for medical practice purposes is limited to purposes "unrelated to determining the connection of physical evidence to a criminal action." *Id.* art. 38.35(a)(4)(F). Harmonizing the definition of forensic analysis with its exceptions, a court would likely conclude that testing constituting medical practice is excluded only if its principal purpose is "unrelated to determining the connection of physical evidence to a criminal action." *Id.* Thus, a laboratory performing postmortem toxicology analysis is a crime laboratory subject to accreditation requirements if, and only if, the purpose of the analysis is to determine the connection of the evidence to a criminal action. *Id.*

Under article 38.35, the purpose of the examination or testing, not how the results are ultimately used, determines whether the laboratory performing the postmortem toxicology analysis is subject to accreditation. *Id.* Further, the purpose of the toxicology depends on why a medical examiner or forensic pathologist requests the analysis. *Cf. id.* art. 38.35(a)(4)(F) (stating that for forensic accreditation purposes, the term "'forensic analysis' . . . includes an examination or test requested by" law enforcement, prosecutors, suspects, defendants, or a court). You acknowledge that "[p]ostmortem toxicology may but does not necessarily involve a criminal action," but you do not provide us with information about circumstances when a request for postmortem toxicology analysis is or is not related to a criminal action. Request Letter at 3. The facts and circumstances concerning a particular request by a medical examiner or forensic pathologist for postmortem toxicology testing and examination will likely determine whether the laboratory that performs the analysis is subject to accreditation requirements.[3]

Moreover, even if statutory definitions could encompass a particular type of analysis, article 38.01 authorizes the Commission to further refine by rule the scope and applicability of the accreditation process requirements to comport with certain practical considerations. *See* TEX. CODE CRIM. PROC. art. 38.01, § 4-d(b); *see also* 37 TEX. ADMIN. CODE § 651.5 (Tex. Forensic Sci. Comm'n, Forensic Disciplines and Procedures Subject to Commission Accreditation). Specifically, the Commission may create exemptions from the accreditation process for an entity conducting a particular type of forensic analysis examination or test that is admissible under a statute or well-established rule of evidence, or if it is "routinely conducted outside of a crime laboratory by a person other than an employee of the crime laboratory." *Id.* art. 38.01, § 4-d(c)(2)–(3). Nevertheless, the Commission's duty to establish an accreditation process for crime laboratories and other specified entities requires the Commission to determine in the first instance, subject to judicial review, whether particular postmortem toxicological analysis is performed for the purpose of determining the connection of physical evidence to a criminal action and therefore subject to accreditation requirements.

---

[3]As discussed above, whether a laboratory or division is subject to accreditation does not resolve whether individual forensic analysts are subject to licensing requirements.

# S U M M A R Y

Postmortem toxicological analysis requested by a medical examiner or forensic pathologist is subject to the Forensic Science Commission's accreditation authority only if it is performed for the purpose of determining the connection of physical evidence to a criminal action. Such purpose depends on why a medical examiner or forensic pathologist requests the analysis, not how the results are ultimately used. Whether any particular postmortem toxicological analysis is performed for the purpose of determining the connection of physical evidence to a criminal action is for the Commission to determine in the first instance, subject to judicial review.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

WILLIAM A. HILL
Assistant Attorney General, Opinion Committee